IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Randal Alan Arnold , :
         Plaintiff : Civil Action 2:10-cv-013

v. : Judge Watson

Michael J. Astrue, : Magistrate Judge Abel
Commissioner of Social Security,
         Defendant :

**REPORT AND RECOMMENDATION**

Plaintiff Randal Alan Arnold brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits.  This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**Summary of Issues.**  Plaintiff Arnold maintains that he is disabled due to depression, anxiety, and issues with his right foot, right wrist, lower back and hips.  (R. 88A.)  The administrative law judge found that Arnold could not perform his previous work as an operator, clamp truck driver, corrugator operator, or off bearer, but found that he retains the ability to perform a reduced range of light work.  (R. 9–17.)

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge's decision unlawfully disregards the medical opinions of Dr. Reichert and Dr. Weiner, Arnold's treating physicians.

- The administrative law judge's decision gives no weight to the medical opinions of Dr. Andronic, Arnold's psychiatrist.
- The administrative law judge failed to consider all of Arnold's severe impairments.
- The administrative law judge's finding that Arnold has the residual functional capacity to perform a full range of light work is unsupported by substantial evidence.
- The administrative law judge's finding that Arnold's testimony is not entirely credible or inconsistent with evidence in the record are unsupported by substantial evidence.
- The evidence supports that Arnold does meet a listing at 1.04(A).
- Because of Arnold's "left foot drop", radiculopathy and GAF, individually and collectively with his other severe impairments, Arnold could not do the full range of light work, therefore the administrative law judge failed to establish that jobs were available in the national economy for Arnold as per the testimony of the vocational expert.
- The administrative law judge failed to properly analyze and misstated the severity of Arnold's symptoms, and thus overstated his residual functional capacity.

**Procedural History.**  Plaintiff filed his application for disability insurance benefits on November 30, 2004[1], alleging that he became disabled on November 1, 2001, at age 43.  (R. 61-65.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On March 7, 2007, Administrative Law Judge Kenneth R. Andrews held a hearing which plaintiff, represented by counsel, appeared and testified.  (R. 654-88.)  On September 27, 2007, the administrative law judge issued a decision finding that Arnold was not disabled within the meaning of the Act.  (R. 9-17.)  On November 5, 2009, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the

---

[1] Arnold previously filed disability insurance benefits applications in September 2003 and January 2004. The applications were denied by initial determination in April 2004. Arnold did not appeal the denials. R. 9, 30-31, 67-69, 84.

2

final decision of the Commissioner of Social Security. (R. 2-4.)

**Age, Education, and Work Experience.**  Plaintiff Arnold was born March 12, 1961. (R. 84.) He was 46 years old at the time of the administrative decision. He has a high school education. (R. 95.) He had past work experience as a laborer and equipment operator. (R. 72.)

**Plaintiff's Testimony.**  At the March 9, 2007, hearing Arnold testified that he can no longer work due to "a lot of injuries at work." (R. 658.) He also testified that he has trouble concentrating. He believed no one will give him a job due to his problems. At his last job, he lifted beer kegs that weighed approximately 145 pounds. (R. 659.) He testified that he was fired from his job in October 2001 because he had some restrictions and was not able to perform his job duties. He had not worked since. (*Id.*)

Arnold lives with his girlfriend. His son lives with them part of the time. (R. 657.) As to his daily activities, Arnold testified that he watched a lot of television, sometimes cooked for himself, did some of his own laundry, and drove a couple times a week. (R. 662.) He estimated he could walk about 300 feet before he would need to stop and sit down. (R. 668.) Arnold also believed that he could lift twenty pounds as long as he did not have to lift from below the waist. (R. 670.) Arnold further testified that sometimes he would experience a month full of "bad" days, where it was difficult for him to walk at all or get up to use the bathroom. (R. 671.) At these times, he would lie on the floor with a pillow between his legs. Other months, he experienced perhaps only ten bad days. (*Id.*)

**Medical Evidence of Record.** The relevant medical evidence of record is summarized as follows:

**Physical Impairments.**

While working in October 1995, Arnold suffered a herniated disk in his back, for which he underwent a right L5 disc excision on January 3, 1996. (R. 291-92.) In August 1997, Dr. Tabet, the neurosurgeon who performed the 1995 surgery, reported that Arnold developed extremely severe low back pain. An MRI of the lumbosacral region on August 25, 1997, demonstrated "post-op changes present on the right at L5 with no obvious evidence of disc recurrence. The L4 disc is bulging and perhaps minimally enlarged. Dr. Tabet recommended non-surgical treatment. (*Id.*)

**Richard Reichert, M.D.** In June 2003, Arnold sought treatment from his family physician, Dr. Reichert, for ongoing leg pain that had worsened. (R. 248.) Arnold was treated with a steroid dose pack, and his symptoms improved somewhat; however, he still experienced some pain down his right leg, and numbness and tingling extending through both legs to his feet. (R. 246.)

A September 2003 MRI of Arnold's lumbar spine showed moderate spinal canal stenosis at L4-5 and L3-4 due to congenitally small spinal canal and concurrent bulging of the annulus. There was also suspicious right paracentral herniated disc at L5-S1. Correlation with S1 radicular symptoms was recommended. (R. 242.) Dr. Reichert reported the findings were "essentially unchanged" from an August 1997 study. (R. 248.)

4

In November 2003, examination revealed that Arnold was unable to walk on heels. (R. 305.)

In May 2004, a lumbar myelogram showed mild hour-glass type narrowing of the thecal sac at L3-4 with non-filling of the bilateral L5 nerve root sleeves. (R. 295.) A Post-myelogram CT of L2 - S1 showed mild, non-bony central spinal stenosis, at L4-5 with a moderate, diffuse disc bulge causing non-filling of the bilateral L5 nerve root sleeves. The myelogram also indicated status post right laminectomy at L5-S1 with a small central disc herniation contacting but not significantly compressing the right S1 nerve root. (*Id.*)

On June 23, 2004, Dr. Reichert reported that he reviewed the CT scan/myelogram and noted that "Arnold experiences significant leg pain consistent with the findings on the CT/myelogram." (R. 300.) In September 2004, Dr. Reichert reported that Arnold walked with a right leg limp. (R. 316.) In January 2005, Dr. Reichert reported that Arnold had abnormal posture or gait with weakness of the lower extremities. (R. 320.)

From June 2003 through January 2007, Dr. Reichert completed several Physician's Report of Work Ability, each time essentially opining that Arnold could not lift more than 20 pounds; could not bend, twist/turn, reach below the knee, or push or pull; and could stand/walk roughly a third of the day, but was otherwise unlimited in his ability to work. (R. 494-96, 498-504, 646, 648.)

**Mark Weiner, M.D.** In January 2004, Dr. Weiner reported that Arnold's neurological examination was "unremarkable." He opined that surgery would not relieve Arnold's back pain. (R. 278-79.)

**Ellin Cusack Frair, M.D.** In April 2004, state agency reviewing physician, Dr. Cusack Frair, opined that Arnold could lift and/or carry up to twenty pounds occasionally and ten pounds frequently; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; was limited in his upper extremities in pushing and pulling; could frequently stoop, crouch, and crawl; and could never climb ladders, ropes and scaffolds. (R. 282-87.)

**Jerry McCloud, M.D./Augusto Pangalangan, M.D.** In May 2005, state agency reviewing physician, Dr. McCloud, opined that Arnold could lift and/or carry and push and/or pull up to twenty pounds occasionally and ten pounds frequently; could stand and/or walk about six hours in an eight-hour workday; and could sit about six hours in an eight-hour workday, (R. 367-74.) Dr. Pangalangan expressed a similar opinion in July 2005. (R. 374.)

**Mental Impairments.**

**Tri-County Help Center, Inc./Maura Andronic, M.D.** Arnold began treatment at Tri-County Help Center, Inc. in December, 2004. (R. 602-06.) At the time of Arnold's initial evaluation, the therapist identified Arnold's diagnosis as major depressive disorder, recurrent, severe. The therapist assigned Arnold a Global Assessment of Functioning (GAF) score of 45. *(Id.)* In February 2005, Arnold was evaluated by

psychiatrist, Dr. Andronic. (R. 596-601.) Dr. Andronic diagnosed major depressive disorder, recurrent and moderate and assigned Arnold a GAF at 50. (*Id.*) She recommended an anti-depressant, sleep medication, and psychotherapy. (*Id.*) Arnold attended 2 counseling sessions in May 2005, and July 2005. (R. 587-95.)

**David Bousquet, M.Ed.** In February 2005, Arnold was evaluated by consulting psychologist, Dr. Bouquet. (R. 361-66.) Dr. Bousquet reported that Arnold was cooperative during the evaluation. His speech was understandable. His affect was appropriate. His mood was depressed and anxious. Arnold described problems with appetite and sleep. Based on information obtained during the evaluation, Dr. Bouquet reported that Arnold meets the diagnostic criteria for Dysthymic Disorder, Attention Deficit Hyperactivity Disorder NOS, Alcohol Abuse, and Bereavement. According to Dr. Bouquet, there were no indications of a formal thought disorder. Arnold was responsive during the evaluation. He demonstrated cognitive abilities that fall in the average range. Dr. Bouquet also reported that Arnold demonstrated consistent difficulties sustaining attention and concentration. He was able to exhibit insight into his psychological difficulties. His reasoning and judgment capacities are at age appropriate levels. Dr. Bousquet assigned Arnold a GAF at 60. Dr. Bousquet, opined that Arnold was mildly to moderately limited in his ability to relate to co-workers and supervisors; was not limited in his ability to understand, follow and remember simple/basic instructions; was mildly to moderately limited in his ability to understand, follow, and remember complex instructions; was moderately impaired in

his ability to maintain adequate persistence and pace and to maintain attention and concentration for simple, repetitive tasks; and was moderately impaired in his ability to deal with the stress and pressure of day-to-day work. (*Id.*)

**Mel Zwissler, Ph.D.** In July 2005, state agency reviewing psychologist, Dr. Zwissler, opined that Arnold could perform simple, routine, low-stress tasks, with no strict time and production demands, and no frequently changing duties. (R. 376-79.) Dr. Zwissler further assessed that Arnold was capable of superficial and occasional social interaction. (*Id.*)

**Administrative Law Judge's Findings.** The administrative law judge found that:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since November 1, 2001, the alleged onset date (20 CFR 404.1520(b) and 20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: lower back impairment with history of surgery for herniated disc; right foot problem with history of injury to right foot; depression; and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the claimant has the residual functional capacity to perform a wide range of light work. More specifically, the claimant can lift/carry occasionally 20 lbs. and frequently 10 lbs.; the claimant can sit, stand, and walk from 4-6 hours, for each aforesaid activity; the claimant should avoid bending, twisting, squatting,

    excessive pushing/pulling, and he should only occasionally grip; the claimant can perform simple, routine, repetitive tasks; the claimant can interact with the public and co-workers; and the claimant has mild limitations in maintaining concentration, persistence and pace.

6. The claimant is unable to perform any past relevant work, since, based on the credible testimony of the vocational expert, such work was at the heavy exertional level; the claimant's limitation to light work obviously precludes a return to any such work (20 CFR 404.1565).

7. The claimant was born on March 12, 1961 and 46 years old, which is defined as a younger individual age, 18-49 (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2001 through the date of this decision (20 CFR 404.1520(g).

(R. 11-17.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" (*Id.*) *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because he meets Listing 1.04 A, based on evidence that the administrative law judge failed to consider. Plaintiff also contends that the administrative law judge erred by failing to recognize Plaintiff's left foot drop and radiculopathy as severe impairments. Finally, Plaintiff argues that the administrative law judge discounted treating physician's GAF finding of 45[2] and gave greater weight to consulting psychologist's, Dr. Bousquet's GAF score of 60, while not evaluating all of his severe impairments against the backdrop of his GAF scores.

---

[2] The record reveals that the intake counselor at Tri-County Help Center, Inc. assigned plaintiff a GAF score of 45.

**Analysis.**

The administrative law judge found that Arnold did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12.) In particular, the administrative law judge found that, the evidence of record clearly does not contain the necessary nerve root compression or radiculopathy, among other signs and symptoms, necessary to meet or equal Listing 1.04. (R. 12.) *See* 20 C.F.R. § 404.1526(c) ("When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding."); *see also* 68 Fed. Reg. 51153, 51154-55 (Aug. 26, 2003) (explaining that step three of the sequential evaluation is whether the claimant's impairments are listed in, or equivalent to, an impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P, Regulations No. 4.).

Plaintiff had the burden at Step 3 to show that his impairments met or equaled the criteria of a specific Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). The United States Court of Appeals for the Sixth Circuit explains:

> At step three, the SSA [Social Security Administration] examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed.... Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed.... The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity.... A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the

11

process ends at step three.
*Combs v. Commissioner of Social Security*, 459 F.3d 640, 643 (6th Cir. 2006)(citing, in part, *Sullivan v. Zebley*, 493 U.S. 532)(other citations omitted).

Listing 1.04A addresses disorders of the spine (such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture) resulting in compromise of a nerve root or the spinal cord, with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A

The record reveals that, although Arnold had a medically documented lower back impairment with history of surgery for herniated disc, the medical evidence did not demonstrate that Arnold satisfied all of the Listing criteria. Although some of the findings required by the listing are present, the record does not contain any evidence related to the requisite of "nerve root compression." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

Plaintiff argues that "The MRIs done 11-6-95 and 9-23-03 show that the herniation at L5-S1 actually "contact[s] the right L5 nerve root within the foramen based on axial images and contacts and posteriorly displaces the right S1 nerve root . . . ." (Tr. 298 and 297). These findings lead Dr. Reichert and Dr. Weiner to opine that the findings

12

were consistent with claimant's "significant leg pain". (R. 300 and 310)." *See* Doc. # 11 at 8-9. The quoted language argued by Arnold is from an MRI performed in November 1995, taken prior to his January 1996 surgery and therefore not substantial evidence showing that Plaintiff meets Listing 1.04A.

Perhaps more significantly, the administrative law judge followed the functional assessments provided by treating physician, Dr. Reichert. (R. 14-15.) The administrative law judge generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . ." 20 C.F.R. § 404.1527(d)(2); *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 408 (6th Cir. 2009).

Under the deferential standard of review applicable to the administrative law judge's decision, the administrative law judge's finding that Plaintiff does not meet Listing 1.04 is not erroneous. Plaintiff also contends that the administrative law judge did not evaluate all of his severe impairments against the backdrop of his GAF scores. *See* Doc. #11 at 12.

Arnold was given a GAF score of 45 by the intake counselor at Tri-County Help Center, Inc. on December 14, 2004 (R. 603); a score of 60 by state agency consulting psychologist, Dr. Bousquet on January 29, 2005 (R. 361 and 365); and a score of 50 on February 24, 2005 by his treating physician, Dr. Andronic. (R. 600.) There is no

indication in the record that Dr. Andronic treated Arnold beyond her initial evaluation. Thus, Dr. Andronic does not meet the regulatory definition of a treating source. *See* 20 C.F.R. §404.1502 (defining treating source as a physician who has had an "ongoing treatment relationship with you"). Dr. Andronic also offered no opinion as to Arnold's workplace restrictions. There also is no apparent error in the administrative law judge's evaluation of the medical evidence pertaining to Arnold's alleged mental impairment. The medical evidence Plaintiff submitted took the form of treatment notes, forms and similar records rather than an actual opinion from his treating psychiatrist regarding his condition. (*See* R. 587-606.) In the absence of any treating physician opinions, the administrative law judge was justified in relying heavily on the consultative examination performed by Dr. Bousquet, and the opinion of state agency reviewing physician, Dr. Zwissler, who offered the only actual "opinions" in the record as to Arnold's alleged mental impairment. (R. 361-66, 376-79.) *See g Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also Peebles v. Chater*, 85 F.3d 629 [table], 1996 WL 229528 (6th Cir. May 6, 1996) ["in the absence of any evidence from treating physicians . . . the ALJ was required to rely on the reports of the consulting physician."].

Plaintiff's argument falls short of the law. His reliance, for example, on his GAF score of 45, proffered by the intake counselor at Tri-County Help Center, Inc. is inappropriate. In another context, the Commissioner has already recognized that the GAF is not an indication of nondisability for Social Security purposes. "The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the

multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings."  Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 F.R. 50765 (Vol. 162, August 21, 2000). " Furthermore, the Commissioner "has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.... The GAF scores, therefore, are not raw medical data and do not necessarily indicate improved symptoms or mental functioning." *Kennedy v. Astrue*, 247 Fed.Appx. 761, 766 (6th Cir. 2007)(internal citations and punctuation omitted). In addition, a GAF score merely represents a "snapshot" of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* DSM-IV-TR at 32-34.  As such, a GAF assessment is isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel  
United States Magistrate Judge